Jasen, J.
(dissenting). The issue in this case is not, as the majority strains to suggest, whether the board of education may avoid the application of State tenure laws by the "simple expedient of delaying formal appointment of a qualified teacher to an available position”, but, rather, whether petitioner is entitled to any credit for the time he spent as a substitute teacher before a regular teaching position became available to satisfy the statutorily mandated three-year probationary period.
It is indisputable that the probationary period, in all but the most unusual circumstances, does not begin to run until that time at which the teacher is formally appointed by the board of education as a regular probationary teacher. (See Education *395 Law, § 2573, subd 1; Matter of Board of Educ. v Nyquist, 31 NY2d 468, 473-474.) While I do not take issue with the majority’s statement that "[a] school district may not avoid strict application of the statutory scheme for granting tenure to qualified and experienced teachers by the strategem of unduly delaying formal appointment of a teacher to a position which that teacher is in fact already filling”, this observation is, by necessity, predicáted upon the assumption that the qualified teacher is filling an available permanent teaching position.
The record in this case clearly does not sustain this assumption. Nowhere in the record is there any evidence of any permanent vacancy in the regular position as woodworking teacher until January 27, 1972, at which time, due to changes in personnel and position allotments, a vacancy occurred effective February 1, 1972. A copy of the official notification form for vacancies submitted for McKee High School shows that a permanent vacancy in the regular position as woodworking teacher was first reported to the Office of Pedagogical Appointments — the office responsible for co-ordinating the appointments of eligible teachers to available positions in the New York City School District — on January 27, 1972. Hence, there was no “available position” to which petitioner could be permanently appointed until such date.
Documentary evidence in the record also discloses that petitioner was serving as a regular substitute teacher until his appointment as a regular probationary teacher on February 1, 1972. It is clear beyond dispute that the official work schedule for McKee High School for the fall 1971 semester shows petitioner to be serving as an “Absent Teacher Reserve” (ATR) — a teacher whose duties require him or her to fill in for absent teachers in various classes. Indeed, petitioner himself claimed salary credit as a regular substitute teacher for the fall months of 1971. In short, it appears that both respondents and petitioner considered the services rendered by petitioner until his formal appointment on February 1, 1972 as those of a regular substitute.
It is most important to stress that petitioner obtained his license as a regular teacher pursuant to the special procedures outlined in section 2569-a of the Education Law. This provision expressly provides that applicants having so obtained their license “shall accept employment under a three-year probationary period which shall not be reduced by reason of *396 any prior substitute service.” As the majority candidly admits, this express language precludes petitioner from claiming any credit for purposes of tenure by virtue of his experience as a substitute teacher.
Petitioner being appointed on February 1, 1972, his statutorily mandated three-year probationary period did not commence until said date and, therefore, did not expire until February 1, 1975. Notice being given to petitioner that he was not being recommended for tenure and that his services were no longer needed within that period, petitioner was properly dismissed and should not now be heard to complain.*
The majority’s great reliance on our recent decision in Matter of Board of Educ. of City School Dist. of City of Oneida v Nyquist (45 NY2d 975, revg on dissenting opn below 59 AD2d 76) to reach a contrary result is misplaced. In Oneida, the critical factor supporting this court’s holding was that the teaching position created by Federal funding was continued by the board of education as soon as funding became available and the same teaching position remained filled by the same teacher. It is this fact, namely the continuity of this regular teaching position, albeit one which was initially dependent on Federal funding, which was the basis of our holding.
In marked contrast, here petitioner did not fill a regular teaching position until his appointment on February 1, 1972, but, rather, served only as a substitute teacher filling in for regularly appointed teachers who were absent. As shown, the record reveals that it was only on this date that a permanent vacancy in a regular teacher’s position for woodworking became available. Thus, our holding in Oneida is not controlling.
Since there is absolutely no support in the record for the majority’s holding that the respondent board of education used the "simple expedient of delaying formal appointment of a qualified teacher to an available position”, I would affirm the unanimous order of the Appellate Division.
Chief Judge Cooke and Judges Jones, Wachtler and *397 Fuchsberg concur with Judge Gabrielli; Judge Jasen dissents and votes to affirm in a separate opinion.
Order reversed, etc.

 Insofar as petitioner was deprived of his full 60 days’ notice, I would concur with the result reached by the Appellate Division that he is entitled to one day’s pay for each day such notice was late. This failure to give timely notice, however, would not appear to taint fatally petitioner’s dismissal. (See Matter of Zunic v Nyquist, 48 AD2d 378, affd 40 NY2d 962.)